# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| FUEL-FROM-WASTE, LLC, ) | |
| ) | |
| Plaintiff/Counterclaim ) | |
| Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| GOLD COAST COMMODITIES, ) | |
| INC., TOM W. DOUGLAS, ) | |
| ROBERT D. DOUGLAS, and ) | |
| TYSON FARMS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | Case No. 2:15-cv-01431-JEO |
| AND ) | |
| ) | |
| GOLD COAST COMMODITIES, ) | |
| INC., ) | |
| ) | |
| Counter-Plaintiff/Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT TREY FLEMING, ) | |
| DAVID DREW, and PETER ) | |
| BEHRLE, ) | |
| ) | |
| Counterclaim Defendants. ) | |

## **MEMORANDUM OPINION**

This action is before the court on two related motions. Defendant Tyson Farms, Inc. ("Tyson"), the sole remaining defendant, has filed a motion to dismiss plaintiff Fuel-From-Waste, LLC's ("FFW") First Amended Complaint. (Doc. 49).

FFW, in turn, has filed a motion to file a Second Amended Complaint. (Doc. 52). For the reasons that follow, Tyson's motion to dismiss will be granted and FFW's motion to file its Second Amended Complaint will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In June 2014, Tyson entered into a contract with Gold Coast Commodities, Inc. ("Gold Coast") for the removal and disposal of lagoon cap sludge materials from Tyson's processing plant in Blountsville, Alabama (the "Service Agreement").[2] Under the Service Agreement, Gold Coast agreed to remove and dispose of the sludge materials at no cost to Tyson in exchange for the right to sell oil extracted from the sludge. The Service Agreement was to "continue in effect for two (2) years … unless terminated as provided in [the Service] Agreement." (Service Agreement at ¶ 1).

---

[1] Unless otherwise indicated, the following facts are taken from FFW's First Amended Complaint. (Doc. 37). Consistent with the motion-to-dismiss standard, the court has assumed the factual allegations in the First Amended Complaint are true and given FFW the benefit of all reasonable factual inferences.

[2] The Service Agreement is referenced throughout the First Amended Complaint (*see* doc. 37 at ¶¶ 21-27), but is not part of FFW's pleadings. However, a copy of the Service Agreement (minus the exhibits thereto) is attached as Exhibit A to Tyson's opposition to FFW's motion to file its Second Amended Complaint. (*See* Doc. 59-1). Because the Service Agreement is central to FFW's claims against Tyson and FFW has not challenged the authenticity of the copy submitted by Tyson, the court may consider the Service Agreement in ruling on the pending motions. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

After entering into the Service Agreement with Tyson, Gold Coast entered into a Subcontract Agreement with FFW (the "Subcontract").[3] Pursuant to the Subcontract, FFW agreed to perform the services Gold Coast had agreed to perform for Tyson under the Service Agreement.  The Subcontract provided that FFW would pay Gold Coast "2% of the amount received from Magnus International from sales of oil from the [Tyson] Lagoon." (Subcontract at ¶ 3).  In the event Magnus International did not buy the oil, Gold Coast agreed "to buy the oil with no sales commissions." (*Id.*)  The term of the Subcontract was the same as the term of the Service Agreement between Tyson and Gold Coast. (*Id.* at ¶ 2).

According to FFW, it was "ready, willing and able" to perform its duties under the Subcontract and, in fact, extracted approximately ten truck-loads of oil from the Tyson lagoon. (Doc. 37 at ¶ 17).  However, in February 2015 Gold Coast refused to purchase the oil from FFW despite prior assurances from Gold Coast and its principals (Tom and Robert Douglas) that Gold Coast would honor its obligations under the Subcontract and purchase the oil.[4]  Six months later, in August 2015, Tyson terminated its Service Agreement with Gold Coast.

---

[3] A copy of the Subcontract was appended as Exhibit A to FFW's initial Complaint. (Doc. 1 at 9-13).

[4] Although it is not clear from FFW's pleadings, it appears that Magnus International did not buy the oil FFW extracted from the lagoon.

3

On August 20, 2015, FFW filed this action against Gold Coast and Tom Douglas. (Doc. 1). FFW did not name Tyson as a defendant. FFW's Complaint asserted a claim against Gold Coast for breach of the Subcontract, a claim against both defendants for fraud, and a claim against Gold Coast for negligence.

After the action had been pending nearly eleven months, FFW filed a motion to file a First Amended Complaint, which motion was granted. (Docs. 36, 37 & 39). Among other additions, the First Amended Complaint adds Tyson as a defendant and asserts two claims against Tyson. In Count Three of the First Amended Complaint, FFW alleges that Tyson tortiously interfered with the "contractual agreement and/or business relationships between [FFW] and Defendant Gold Coast …, as well as other potential purchasers of the oil to be extracted from the [Tyson] lagoon by unilaterally and untimely terminating the [Service] [A]greement prior to the expiration of the two year term without proper justification." (Doc. 37 at ¶ 45). In Count Four, which is labeled as a negligence claim, FFW alleges that Tyson "owed a duty to [FFW] to provide … access to the lagoon for a period of two years" but that Tyson "unilaterally and untimely terminated its agreement with Gold Coast … and further restricted [FFW's] access to the lagoon …." (*Id.* at ¶¶ 53-54).

After being served, Tyson filed the pending motion to dismiss the First Amended Complaint, asserting that FFW has failed to state a claim against Tyson for either tortious interference or negligence. (Doc. 49). In response, FFW has agreed to the voluntarily dismissal of its negligence claim against Tyson (doc. 58 at 6), but has also filed a motion to file a Second Amended Complaint that retains a tortious interference claim against Tyson and adds a claim against Tyson for breach of contract.[5] The breach-of-contract claim is based on Tyson's alleged breach of duties it owed to FFW as an alleged third-party beneficiary of the Service Agreement and as an alleged assignee of Gold Coast's scope of work under the Service Agreement. (Doc. 53 at ¶¶ 57-62).

Tyson has submitted both a reply in support of its motion to dismiss FFW's First Amended Complaint (doc. 66) and an opposition to FFW's motion to file its Second Amended Complaint (doc. 59). Tyson argues that FFW has still failed to state a tortious interference claim against Tyson and that the factual allegations in the Second Amended Complaint do not support a breach-of-contract claim against

---

[5] Although FFW states in its response to Tyson's motion to dismiss that it is voluntarily dismissing its negligence claim against Tyson, FFW's proposed Second Amended Complaint includes a negligence claim against Tyson. (*See* Doc. 53 at ¶¶ 53-56). Because the negligence claim in the Second Amended Complaint is identical to the negligence claim in the First Amended Complaint, the court will assume that FFW included the claim in the Second Amended Complaint by mistake and will treat the claim as if it has been abandoned.

Tyson.  Tyson thus argues that FFW's motion to file the Second Amended Complaint should be denied and that Tyson should be dismissed from this case.[6]

## STANDARDS OF REVIEW

**A.     Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted.  On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).  In considering a motion to dismiss, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[6] All claims and counterclaims by and between the other parties to this case have been dismissed. (*See* Doc. 77).

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B.     Motion to Amend**

"Ordinarily, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief,' *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962), leave to amend 'should be freely given,' Fed. R. Civ. P. 15(a).   Under *Foman,* however, a district court may properly deny

leave to amend the complaint under Rule 15(a) when such amendment would be futile. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004). Denial of leave to amend is justified by futility "'when the complaint as amended is still subject to dismissal.'" *Id.* at 1263 (quoting *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999)). *See also Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1216 (N.D. Ala. 2010) ("the court may refuse the amendment and dismiss the complaint if amendment would be futile due to legal or factual inadequacies in the pleading, or if it is 'patently obvious' that the plaintiff could not prevail" (citations omitted)).

## DISCUSSION

Because Tyson's motion to dismiss FFW's First Amended Complaint and FFW's motion to file its Second Amended Complaint are related, the court will address both motions together. Resolution of both motions depends on whether FFW has stated a claim against Tyson for tortious interference with contractual and/or business relations or for breach of contract.[7] Tyson argues that FFW has failed to state a tortious interference claim against Tyson in either its First or its Second Amended Complaint and that the breach-of contract claim in the Second

---

[7] As noted above, FFW has voluntarily dismissed its negligence claim against Tyson.

Amended Complaint fails as a matter of law and is futile.  FFW argues that it has properly alleged both a tortious interference claim and a breach-of-contract claim against Tyson in its Second Amended Complaint.  The court will consider each claim in turn.

### A.     Tortious Interference

In Alabama, a claim for tortious interference with contractual or business relations requires proof of five elements: (1) the existence of an enforceable contract or protectable business relationship; (2) the defendant's knowledge of the contract or business relationship; (3) that the defendant was a stranger to the contract or business relationship; (4) the defendant's intentional interference with the contract or business relationship; and (5) damage to the plaintiff. *Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc.*, 785 F. Supp. 2d 1258, 1279 (M.D. Ala. 2011) (citing *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009), and *Hope for Families & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1177 (M.D. Ala. 2010)); *see also Mac East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008).  Here, FFW alleges in its First Amended Complaint that Tyson tortiously interfered with the "contractual agreement and/or business relationships between [FFW] and Defendant Gold Coast …, as well as other potential purchasers of the oil to be extracted from the [Tyson] lagoon by unilaterally and untimely

9

terminating the [Service] [A]greement prior to the expiration of the two year term without proper justification." (Doc. 37 at ¶ 45).  In its motion to dismiss, Tyson argues that the claim is due to be dismissed because Tyson is not a stranger to the Subcontract between FFW and Gold Coast and is not a stranger to FFW's business relationships with Gold Coast or any other potential purchasers of extracted oil.

FFW has conceded that there is privity of contract between Tyson, Gold Coast and FFW—and, by implication, that Tyson is not a stranger to FFW's contractual relationship with Gold Coast such that Tyson could be liable for interference with that relationship.  In FFW's Second Amended Complaint, however, FFW alleges that Tyson "was fully aware of the contractual agreements and/or business relationships between [FFW] … and other potential purchasers of the oil, including but not limited to, Viesel Fuel, Inc. …." (Doc. 53 at ¶ 26).  FFW argues that Tyson "does not (and cannot) affirmatively contend that [Tyson] is in privity with, or had a contractual relationship with," Viesel. (Doc. 58 at 5).  FFW argues that "with respect to the contractual and business relationships between [FFW] and Viesel Fuel, LLC, as well as other purchasers of the oil to which [FFW] contends … Tyson tortuously [sic] interfered, [FFW] has sufficiently alleged a cause of action for tortious interference and [Tyson's] Motion to Dismiss such claim is due to be denied." (*Id.* at 5-6).

10

Tyson retorts that FFW "has not alleged sufficient facts to support [the existence of] protectable business relationships with Viesel or any other unidentified potential purchaser of extracted oil, much less facts supporting that Tyson was somehow aware of those relationships." (Doc. 66 at 3). Tyson further argues that it "does not have to be 'in privity with,' or have a contract with, Viesel to avoid being a stranger to the purported relationship between [FFW] and Viesel." (*Id.* at 5). Tyson asserts that it is *not* a stranger to the alleged relationship between FFW and Viesel (or to FFW's relationships with any other potential purchasers of extracted oil) and that the tortious interference claim in FFW's Second Amended Complaint fares no better than the tortious interference claim in its First Amended Complaint. The court agrees with Tyson.

### 1. Protectable Business Relationship

FFW's Second Amended Complaint contains a single passing reference to Viesel as a "potential purchaser" of the oil to be extracted from the Tyson lagoon. (Doc. 53 at ¶ 26). No other potential purchasers of the oil are identified. Although FFW does not allege that it had a contract with Viesel for purchase of the oil, "'protection is appropriate against improper interference with reasonable expectancies of commercial relations even when an existing contract is lacking.'" *Ex parte Alabama Dep't of Transp.*, 764 So. 2d 1263, 1270 (Ala. 2000) (citing

*Restatement (Second) of Torts* § 766 cmt. c (1979)).  However, "'greater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations.'" *White Sands*, 32 So. 3d at 15 (citing *Restatement* § 767 cmt. j).  "[T]he inquiry in this tort is which interests along the *continuum* of business dealings are protected.  The question, in other words, is when has an expectancy matured to the stage that it is deemed worthy of protection from interference." *Id.* at 15 (emphasis in original) (citations and internal quotations omitted).

Here, FFW's Second Amended Complaint provides no information about FFW's business dealings with Viesel.  Indeed, the Second Amended Complaint is silent as to whether FFW and Viesel ever discussed Viesel's potential purchase of the oil to be extracted from the Tyson lagoon, let alone whether FFW had an expectancy of entering into a contract with Viesel for purchase of the oil.  FFW's bare allegation that Viesel was a "potential purchaser" of the oil is insufficient to establish the existence of a protectable business relationship on which to base a claim for tortious interference with business relations. *See Iqbal*, 556 U.S. at 678 (2009) (a complaint does not suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citing *Twombly*, 550 U.S. at 557)); *cf. White Sands*, 32 So. 3d at 15-16 (holding that a letter of intent to purchase five lots

12

evidenced "a relationship based on a reasonable expectation of a commercial benefit" sufficient to support a claim for tortious interference with business relations).

### 2. Knowledge of the Business Relationship

Likewise, the Second Amended Complaint provides no factual support for FFW's naked assertion that Tyson was "fully aware" of the alleged business relationship between FFW and Viesel. Even assuming for argument's sake that FFW had a protectable business relationship with Viesel, FFW has not alleged any facts explaining how Tyson would have been aware of that relationship.

### 3. Stranger to the Business Relationship

Finally, even if FFW had satisfactorily alleged the existence of a protectable business relationship with Viesel and Tyson's knowledge of that business relationship, the court is satisfied that Tyson would not be a "stranger" to the relationship. "A defendant is not a stranger to a contract or business relationship when '(1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.'"

*MAC East*, 535 F.3d at 1297 (quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1156 (Ala. 2003) (quoting *Britt Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996))).  As the Supreme Court of Alabama explained in *Waddell & Reed*:

> One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract.

*Waddell & Reed*, 875 So. 2d at 1157; *see id.* at 1154 ("A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship").

Here, the nature of the alleged business relationship between FFW and Viesel was that of seller (FFW) and potential purchaser (Viesel) of oil to be extracted by FFW from the Tyson lagoon pursuant to the terms of FFW's Subcontract with Gold Coast.  Absent Tyson's Service Agreement with Gold Coast, there would be no Subcontract; absent the Subcontract, there would be no business relationship between FFW and Viesel and no oil for FFW to sell to Viesel. Moreover, the Service Agreement provided that Tyson would be

14

"compensated at the rate of $.005 per pound ($.038 per gallon) of recovered oil from the … lagoon for all oil extracted in excess of 1,500,000 gallons." (Service Agreement at ¶ 5). Therefore, Tyson had a legitimate economic interest in and a legitimate relationship to any business relationship (or contract) involving FFW's sale of extracted oil, whether to Viesel or any other potential purchaser of the oil. Tyson was an "essential entity" to the purported injured relations between FFW and Viesel, as those relations flowed from and were dependent upon Tyson's Service Agreement allowing Gold Coast to extract and sell the oil. Regardless of whether Tyson was in privity of contract with Viesel or any other potential purchaser of the extracted oil, Tyson was not a stranger to FFW's relationships with those entities.

For all of the above reasons, the court finds that FFW has failed to state a tortious interference claim against Tyson in either its First or its Second Amended Complaint.

B.  **Breach of Contract**

As previously noted, FFW has voluntarily dismissed its negligence claim against Tyson, and in its stead has asserted a claim for breach of contract. In FFW's Second Amended Complaint, FFW declares that it was "the intended third party beneficiary" of the Service Agreement between Tyson and Gold Coast and

that it "took an assignment" of Gold Coast's scope of work under the Service Agreement. (Doc. 53 at ¶¶ 22-23). FFW alleges that Tyson breached the contractual obligations it owed to FFW as a third-party beneficiary/assignee of the Service Agreement by untimely terminating the Service Agreement and refusing to provide FFW with access to the lagoon sludge materials in accordance with the terms and conditions of the Service Agreement. (*Id.* at ¶¶ 58-62). Tyson responds that FFW's breach-of-contract claim fails as a matter of law because FFW has not pleaded facts establishing that it was either a third-party beneficiary or an assignee of the Service Agreement.[8] Again, the court agrees with Tyson.

### 1. Third-Party Beneficiary

"To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101-02 (Ala. 1987) (citations omitted). Here, FFW has alleged in conclusory fashion that it was

---

[8] Tyson also argues that FFW has not identified any provision of the Service Agreement that Tyson allegedly breached. Although FFW does not identify the specific provision or provisions it claims Tyson breached, FFW does allege that Tyson "unilaterally and untimely" terminated the Service Agreement "without justification." (Doc. 53 at ¶¶ 27 & 59). Construing these allegations in the light most favorable to FFW, FFW appears to be contending that Tyson breached the Service Agreement by terminating the agreement without justification prior to the expiration of the agreement's initial two-year term.

the "intended third party beneficiary" of the Service Agreement between Tyson and Gold Coast, but has offered no factual support for that naked assertion. In particular, FFW has not pointed to any provision in the Service Agreement evidencing an intent to bestow a direct benefit upon FFW or identifying FFW as the intended beneficiary of the agreement. Indeed, FFW is not even mentioned anywhere in the Service Agreement, which unambiguously provides that "the underlying purpose of this Agreement is for [Gold Coast] to receive the benefit of the receipt of the [sludge] materials and for Tyson to receive the benefit of the removal of the [sludge] materials, regardless of payment arrangements[.]" (Service Agreement at 1). FFW's bare allegation that it was the intended third-party beneficiary of the Service Agreement "is precisely the type of factually unsupported legal conclusion that *Iqbal* and *Twombley* [sic] prohibit." *Shedd v. Wells Fargo Home Mortg., Inc.*, 2014 WL 6451245, *4 (S.D. Ala. Nov. 17, 2014) (determining that the plaintiffs' bare allegation that they were intended third-party beneficiaries of a servicing contract was insufficient to support a breach-of-contract claim based on a third-party beneficiary theory). Accordingly, to the extent FFW's breach-of-contract claim against Tyson is based on a third-party beneficiary theory, the claim is subject to dismissal.

### 2. Assignment

FFW also alleges (apparently as an alternative to its third-party beneficiary theory) that it "took an assignment" of the Service Agreement from Gold Coast. In other words, FFW appears to be contending that its Subcontract was actually an assignment of the Service Agreement from Gold Coast to FFW. Again, FFW offers no factual (or legal) support for this contention, which is belied by the express terms of the Subcontract.

An assignment is the "transfer of rights or property." *Black's Law Dictionary* (10th ed. 2014); *see also DeVenney v. Hill*, 918 So. 2d 106, 113 (Ala. 2005) ("There has been an assignment (1) if the assignor intended to transfer a present interest in the subject matter of the contract, and (2) if the assignor and the assignee mutually assented to the assignment." (citations omitted)). A subcontract, on the other hand, is a "secondary contract made by a party to the primary contract for carrying out the primary contract, or a part of it." *Black's Law Dictionary* (10th ed. 2014). Here, FFW's Subcontract does not reflect the transfer of any rights or property from Gold Coast to FFW; rather, the Subcontract reflects FFW's agreement to perform Gold Coast's scope of work under the Service Agreement. *See* the Subcontract at ¶ 1. The Subcontract is a secondary contract made by Gold

18

Coast for carrying out the primary contract (the Service Agreement). It is not an assignment.

The Service Agreement also provides that Tyson "hereby consents to allow [Gold Coast] to subcontract Services as may be necessary for the efficient performance of this Agreement …." (Service Agreement at ¶ 8(c)(1)). That is what Gold Coast did here—it subcontracted its scope of work to FFW. With respect to assignment, however, the Service Agreement provides that "this Agreement may not be assigned, in whole or in part, by any party without first obtaining the written consent of the other party …." (*Id.* at ¶ 12(f)). There is no allegation in FFW's Second Amended Complaint that Gold Coast ever requested or obtained Tyson's written consent to an assignment of the Service Agreement to FFW, which would have been a prerequisite to any assignment. Moreover, the Subcontract provides that the provisions of the Service Agreement that apply to the scope of work to be performed by FFW "are incorporated herein by reference." (Subcontract at ¶ 10). If the Service Agreement had been assigned to FFW, as FFW now claims in its Second Amended Complaint, there would have been no need to incorporate its terms in the Subcontract.

For all of these reasons, FFW's bare allegation that it "took an assignment" of the Service Agreement does not suffice. To the extent FFW's breach-of-

contract claim against Tyson is based on an assignment theory, the claim is once again subject to dismissal.

## CONCLUSION

For the foregoing reasons, the court concludes that FFW has failed to state a claim against Tyson for tortious interference with contractual and/or business relations in either its First or its Second Amended Complaint. The court further concludes that FFW has failed to state a breach-of-contract claim against Tyson in its Second Amended Complaint, rendering the Second Amended Complaint futile. Accordingly, FFW's motion to file the Second Amended Complaint (doc. 52) will be DENIED and Tyson's motion to dismiss the First Amended Complaint (doc. 49) will be GRANTED. A separate order consistent with this opinion will be entered separately.

DATED this 9th day of January, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge